**STRICK REAL ESTATE COMPANY**

v.

**FRUEHAUF CORPORATION**

v.

**STRICK CORPORATION.**

Civ. A. No. 41877.

United States District Court
E. D. Pennsylvania.

March 7, 1968.

E. Barclay Cale, Morgan, Lewis & Bockius, Philadelphia, Pa., for third-party plaintiff Fruehauf Corporation.

Edward W. Mullinix, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for third-party defendant Strick Corporation.

OPINION

JOSEPH S. LORD, III, District Judge.

Presently before me is the motion by the third party defendant Strick Corporation for summary judgment on the claim asserted by the third party plaintiff Fruehauf Corporation ("Fruehauf").

In order to place this motion in the proper perspective it is necessary to set out the factual background of the entire case. Plaintiff in this action is the Strick Real Estate Company ("Real Estate"). On February 1, 1955, plaintiff leased certain real property to Strick Plastics Corporation ("Plastics"). Fruehauf subsequently purchased Plastics which it operated as its Strick Division. With the consent of the lessor, Real Estate, Fruehauf took an assignment of the lease which became one of the assets of Fruehauf's Strick Division.

Fruehauf claims to have terminated this lease in 1962. Real Estate claims that this termination was invalid and that Fruehauf owes for rents due from the period March 1962 to November 1966, and also damages for the failure to make necessary repairs.

Fruehauf, although in no way conceding liability, asserts that if the lease is still in effect all amounts due are owed by the third party defendant, Strick Corporation ("Strick").

Strick was formed as a result of an Order of the Federal Trade Commission in May, 1965 directing Fruehauf to divest

itself of its Strick Division. Pursuant to this Order Fruehauf entered into negotiations wtih certain executives of the Strick Division. These executives organized a new corporation, Strick Corporation ("Strick"), which ultimately purchased the entire Strick Division as an operating entity. At the time of the sale neither side was aware that the lease might possibly still be in existence. Fruehauf, however, alleges that if it is liable on the lease, Strick is responsible to it for the amount due. Strick naturally contends the opposite. Each side points to the Agreement of Sale to support its position. Strick has now moved for summary judgment.

Having examined the documents before me, particularly the Agreement of Sale, I find that the circumstances are such that it would be inappropriate to foreclose any of the issues at this time. Thus, summary judgment must be denied.

Assuming that the lease was not effectively terminated, the broad question here is whether Strick, by virtue of its purchase, assumed the liability for all or part of the amounts due.[1]

With regard to that portion of the amount alleged due on the closing date [2] (as opposed to amounts accruing after that time) Fruehauf points to Section 3 of the Agreement of Sale to support its position. This section provides in part that:

"The liabilities of Seller to be assumed by Buyer at the closing date shall consist of the following as then constituted: (a) the classifications of current liabilities (without the dollar amounts) of the Strick Division shown on the comparative balance sheet as follows:

"Current Liabilities:

"Trade Accounts Payable Reserve for Warranties Other Current Liabilities."

It is undisputed that amounts due under a lease would be classified under "Other Current Liabilities." Fruehauf contends that it is of no importance that the existence of the liability may not have been known at the date of the closing. All that matters is that it did, in fact, exist at that time. To support this argument Fruehauf would have us take special note of the fact that no dollar amount was placed in any of the categories. This, it claims, demonstrates the parties' intent that Strick should assume all liabilities that would have been classifiable under one of the appropriate headings if the liability had been known on the closing date. In other words, Fruehauf claims that Strick assumed the risk of an unknown liability.

After examining the entire Agreement of Sale we are not persuaded by this argument. The Agreement is dated January 11, 1966, to be effective, however, as of January 1, 1966. At that time there was no precise figure as to the liabilities of the Strick Division. Thus, the parties could only estimate the net book value. This they estimated at $22,-000,000. However, Section 5 of the Agreement provides in part that:

"[T]he parties shall make available to the other forthwith all of the books and records applicable to the Strick Division, and shall cause a balance sheet of the Strick Division to be prepared as of the close of business on December 31, 1965. * * * the balance sheet * * * shall fairly reflect * * * the liabilities to be assumed. * * *"

This would appear to explain the absence of any dollar amounts in Section 3. It seems reasonable to assume that the categories in Section 3, which were duplicative of the balance sheet categories, were solely to identify those categories that were to later appear on the Approved Balance Sheet. And, of course, the Approved Balance Sheet would con-

---

1. An issue *not* present here is what rights Strick would have against Fruehauf if it was found that Strick had assumed the liability.

2. This includes the rent from November 1962 to the closing date and also damages for the failure to repair in accordance with the provisions of the lease.

tain dollar amounts. Thus we could well conclude that the dollar amounts of the liabilities assumed were only those that later appeared on the Approved Balance Sheet.[3]

Neither party, however, in its brief or on oral argument addressed itself to this point. It would therefore appear to be improvident to foreclose this issue at the present time. By allowing the case to go to trial Fruehauf will have the opportunity to produce evidence that would contradict the inference we have drawn from our reading of the Agreement.

Fruehauf next claims that the portion of the amount allegedly owed that accrued after the closing date was assumed by Strick under Section 3(c) of the Agreement of Sale. The relevant portion of that section is as follows:

"3. The liabilities of seller to be assumed by buyer at the closing shall consist of the following as then constituted: (c) Obligations of seller under existing contracts relating to the business of the Strick Division (either as purchaser, or in any other capacity) and leases of real estate and personal property used by the Strick Division (either as lessee or lessor); * * *."

Fruehauf claims that both parts of (c) apply to the present case. We disagree. The first portion talks in general terms of "obligations of seller under existing contracts." The second portion specifically deals with "leases of real estate * * * used by the Strick Division. * * *" This suggests to us that any question with regard to whether a future liability under a lease was assumed must be viewed in the context of the second portion of (c).

Obviously the lease in the present case was a lease of realty used by the Strick Division. Strick contends, however, that it only assumed the liabilities under leases used by the Strick Division "at the closing date." Of course the language of

the clause does not contain this qualification. However, we think it reasonable to infer that the Agreement addressed itself to the closing date when it spoke of "used by the Strick Division." In this respect it is important to note that the parties had no reason to know of the possibility that this lease might still be in existence. As far as the parties were concerned the only leasehold interests to be transferred under Section 2 of the Agreement of Sale were identified by reference to a property list that was appended to the Agreement. And, of course, that list did not contain this lease. The failure to include the property on the list would seem to make unnecessary the words "at the closing date" since it is likely that neither party anticipated the existence of a lease of which it was unaware. However, for the same reason that we did not foreclose Fruehauf on its first contention, we will not do so here.

Strick has raised two points which for the sake of completeness should be discussed briefly.

*First*, Strick contends that the assumption of liabilities agreement, which was dated the same day as the Agreement of Sale, relieves it of any responsibility for the amount presently in dispute. Assuming Strick's interpretation of this document to be correct, which we in no way concede, then, at best, this accompanying agreement is merely evidence to counter Fruehauf's interpretation of the Agreement of Sale. It clearly, however, is not dispositive of the case.

Strick also contends that Section 14(d) of the Agreement of Sale exonerates it from any liability. The relevant language of that section is as follows:

" * * * [B]ut buyer shall not be liable for loss, if any * * * in connection with claims based on transactions or events which occurred before the Effective Date."

While the language quoted would appear to be directly on point, it obviously does

---

3. The Agreement also provided an adjustment for expenses in the interim period. This is the period between the effective date and the closing date.

not speak to liabilities that were assumed by Strick in a different portion of of the Agreement. Thus, if Fruehauf is correct that under Section 3 of the Agreement Strick assumed the liability in question then Section 14(d) would have no effect.

Summary judgment will hereby be denied.

It is so ordered.